**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Cashman Properties, LLC, Respondent,

v.

WNL Properties, LLC; E. Oswald Lightsey Trust f/b/o Louise Lightsey Baughman; the Trust under Will of E. Oswald Lightsey dated August 8, 1958, and Codicil dated March 23, 1976, for the Benefit of Lillian Lightsey Drawdy; and the Trust Under Will of E. Oswald Lightsey for the Benefit of Claudia Lightsey Ware, Appellants.

Appellate Case No. 2012-213579

---

Appeal From Beaufort County
Marvin H. Dukes, III, Master-in-Equity and Special
Circuit Court Judge

---

Unpublished Opinion No. 2014-UP-430
Heard October 8, 2014 – Filed November 26, 2014

---

**AFFIRMED**

---

James Ashley Twombley, of Twenge & Twombley, LLC, of Beaufort, for Appellants.

John S. Nichols, of Bluestein Nichols Thompson & Delgado, LLC, of Columbia; and James P. Scheider, Jr.,

Roberts Vaux, and Mark S. Berglind, all of Vaux & Marscher, PA, of Bluffton, for Respondent.

---

**CURETON, A.J.:**  In this declaratory judgment action filed by Cashman Properties, LLC (the Cashmans) against WNL Properties, LLC, E. Oswald Lightsey Trust f/b/o Louise Lightsey Baughman, the Trust under Will of E. Oswald Lightsey dated August 8, 1958, and Codicil dated March 23, 1976, for the Benefit of Lillian Lightsey Drawdy, and the Trust Under Will of E. Oswald Lightsey for the Benefit of Claudia Lightsey Ware (collectively the Lightseys),[1] the Lightseys appeal the trial court's decision declaring the Cashmans and the Lightseys were joint owners of a pier.  The Lightseys argue the trial court erred in: (1) granting a declaratory judgment to the Cashmans; (2) making findings of fact and conclusions of law that were not supported by the evidence or South Carolina case law; and (3) making *ex mero motu* findings.  We affirm.

**FACTS**

For nearly eighty years, the Cashmans and the Lightseys owned neighboring plots of land on Oyster Street in Beaufort County, South Carolina.  The two properties do not abut May River (the river); instead, they are located across Oyster Street from the river.  In the early 1900s, with the Lightseys' assistance, the Cashmans built a pier (Pier 1) on the commonly-owned neighborhood property (common property) across Oyster Street abutting the river.  Pier 1 was affixed to the common property and extended out into the river.  In 1946, after a storm destroyed Pier 1, the Cashmans constructed a second pier (Pier 2) in the same vicinity, replacing Pier 1.  The Lightseys also assisted with constructing Pier 2, and both parties used the two piers.  After a storm destroyed Pier 2, the Lightseys constructed a new pier (Pier 3) in the same vicinity as Piers 1 and 2, replacing Pier 2.  The parties agreed the Cashmans constructed, maintained, and regularly used a floating dock on the east side of Pier 3's pier head.  In 2005, after a storm destroyed the floating dock, the Cashmans engaged a construction firm to replace it.  However, the Lightseys had placed a lock on Pier 3's entry gate and notified the Cashmans that they were no longer allowed to use Pier 3.

---

[1] Although corporate in name, the litigants are descendants of the Cashman and Lightsey families.

In 2009, the Cashmans brought a declaratory judgment action against the Lightseys seeking a determination that the families were joint owners of Pier 3. The Cashmans also sought injunctive relief, alleging prescriptive easement, resulting trust, and adverse possession. The trial court issued a declaratory judgment, finding the parties were tenants in common with respect to Pier 3, ordering the Lightseys to unlock the gate on Pier 3, and requiring the parties to equally split the expenses directly related to Pier 3 that the Lightseys incurred since the date of filing and all costs for future maintenance and upkeep. The trial court found laches barred the Lightseys from recovering costs paid for constructing and maintaining Pier 3 prior to the date of filing. The trial court stated the supplemental hearing order determining costs would be considered the final order for appeal purposes. Prior to the final order, the Cashmans withdrew their adverse possession claim and the trial court denied the Cashmans' claims for prescriptive easement and resulting trust. Following a costs hearing, the trial court ordered the Cashmans pay the Lightseys $214.18 for half of all maintenance expenses and $247.83 for half of the property taxes the Lightseys paid since the filing of the complaint. This appeal followed.

## STANDARD OF REVIEW

"A suit for declaratory judgment may be legal or equitable, and is characterized as such by the nature of the underlying issue outlined in the complaint." *Lowcountry Open Land Trust v. State*, 347 S.C. 96, 101, 552 S.E.2d 778, 781 (Ct. App. 2001). We must look to the action's main purpose as reflected by the nature of the pleadings, evidence, and character of relief sought to determine whether the claim is legal or equitable. *Gordon v. Drews*, 358 S.C. 598, 604, 595 S.E.2d 864, 867 (Ct. App. 2004).

Here, the pleadings and evidence indicate the Cashmans' primary purpose in asserting their claims was to require the Lightseys to remove the lock from Pier 3 to enable the Cashmans to continue to use the pier. Because their primary purpose in asserting these claims was to obtain injunctive relief, we find the action is equitable in nature. *See Cedar Cove Homeowners Ass'n, Inc. v. DiPietro*, 368 S.C. 254, 258, 628 S.E.2d 284, 286 (Ct. App. 2006) ("The character of an action as legal or equitable depends on the relief sought."). Therefore, on appeal of such a determination, this court may find facts in accordance with its own view of the preponderance of the evidence. *Felts v. Richland Cnty.*, 303 S.C. 354, 356, 400 S.E.2d 781, 782 (1991). "However, this broad scope of review does not require an appellate court to disregard the findings below or ignore the fact that the trial [court] is in the better position to assess the credibility of the witnesses." *Pinckney*

*v. Warren*, 344 S.C. 382, 387, 544 S.E.2d 620, 623 (2001). "Moreover, the appellant is not relieved of his burden of convincing the appellate court the trial [court] committed error in his findings." *Id.* at 387-88, 544 S.E.2d at 623.

## LAW/ANALYSIS

### I.      Declaratory Judgment

The Lightseys maintain the trial court erred in issuing a declaratory judgment. We disagree.

The Declaratory Judgment Act (the Act) provides: "Courts of record within their respective jurisdictions shall have power to declare rights, status[,] and other legal relations whether or not further relief is or could be claimed." S.C. Code Ann. §15-53-20 (2005). "An adjudication that would not settle the legal rights of the parties would only be advisory in nature and, therefore, would be beyond the intended purpose and scope of the [Act]." *Sunset Cay, LLC v. City of Folly Beach*, 357 S.C. 414, 423, 593 S.E.2d 462, 466 (2004). "To state a cause of action under the [Act], a party must demonstrate a justiciable controversy." *Id.* "'A justiciable controversy is a real and substantial controversy which is appropriate for judicial determination, as distinguished from a dispute or difference of a contingent, hypothetical or abstract character.'" *Id.* (citations omitted). "The basic purpose of the Act is to provide for declaratory judgments without awaiting a breach of existing rights." *Id.* "The [Act] should be liberally construed to accomplish its intended purpose of affording a speedy and inexpensive method of deciding legal disputes and of settling legal rights and relationships, without awaiting a violation of the rights or a disturbance of the relationships." *Graham v. State Farm Mut. Auto. Ins. Co.*, 319 S.C. 69, 71, 459 S.E.2d 844, 845 (1995).

The Lightseys argue the Cashmans are not entitled to a declaratory judgment because their claims for adverse possession, prescriptive easement, and resulting trust were withdrawn or dismissed. However, the Act provides trial courts are authorized to declare rights, status, and other legal relations whether any further relief is or could be claimed. § 15-53-20; *Sunset Cay*, 357 S.C. at 423, 593 S.E.2d at 466. We find the declaratory judgment issued here is in full conformity with the true intent and meaning of the Act. *Graham*, 319 S.C. at 71, 459 S.E.2d at 845.

Here, the presence of an actual controversy is sufficiently demonstrated by the pleadings. In their amended complaint, the Cashmans sought a declaratory judgment declaring that the parties are "by virtue of the facts set forth in the preceding paragraphs, the joint owners, as tenants in common, of [Pier 3] located

on and emanating from the [c]ommon [p]roperty." Further, the amended complaint states, "**WHEREFORE**, the Plaintiffs pray that this Honorable Court issue an Order finding the Plaintiffs and Defendants are joint owners of the fixture affixed to the [c]ommon [property] as tenants in common and for such relief as this [c]ourt may find just and proper." Therefore, from the pleadings and proceedings below, it is abundantly clear that the parties were in an "actual controversy" over their respective rights to Pier 3. *See Sunset Cay*, 357 S.C. at 423, 593 S.E.2d at 466 ("To state a cause of action under the [Act], a party must demonstrate a justiciable controversy.").

During oral arguments before this court, the Lightseys contended the pleadings did not put them on notice that the Cashmans were claiming ownership of the pier as an appurtenant structure to commonly-owned property. We disagree. The complaint clearly asserts the pier is attached to a 1/10 acre strip of land, to which the Lightseys concede in their answer is common property. Further, we are not persuaded by the Lightseys' remaining arguments on this issue and find there is substantial evidence in the record to support the trial court's decision that the Lightseys and the Cashmans are tenants in common with respect to Pier 3. Finally, we observe that the Lightseys have not appealed the trial court's finding that there has been "no effective ouster" of the Cashmans as tenants in common. Accordingly, the trial court properly granted the declaratory judgment.

## II.    Trial Court's Findings of Fact

The Lightseys argue the evidence does not support the trial court's findings that the parties: (1) participated in a consistent and cooperative pattern and practice of use and ownership of Piers 1, 2, and 3 for eighty years; (2) had the substantial belief that they had the right to use the piers for eighty years; and (3) used Pier 3 without permission from each other. Inasmuch as we have concluded Pier 3 is an appurtenant structure to common property co-owned by the Cashmans and Lightseys, we conclude these findings, though unnecessary to sustain the trial court's decision, do not amount to reversible error because the Lightseys suffered no prejudice as a result of the findings. *See McCall v. Finley*, 294 S.C. 1, 4, 362 S.E.2d 26, 28 (Ct. App. 1987) ("Appellate courts recognize—or at least they should recognize—an overriding rule of civil procedure which says: whatever doesn't make any difference, doesn't matter.").

The Lightseys also argue the trial court erred in finding, *ex mero motu*: the base of Pier 3 is attached to land designated as common property; the common right of access to the river arises from deeds; neither party claims a right to land below the

mean high water mark; and a structure on common property and used by co-owners becomes common property. In view of the undisputed fact that the 1/10 acre tract of land to which the pier is attached abuts the river and documentary evidence presented to the trial court reflects the tract was dedicated to the common use of the parties and others in the subdivision, we find no reversible error.

Additionally, the Lightseys maintain the trial court erred in finding, *ex mero motu*, laches prevented the Lightseys from seeking reimbursement from the Cashmans for pier expenses incurred prior to the filing of the summons and complaint. We agree the trial court erred in applying laches as a defense to preclude the Lightseys from recovering costs incurred prior to the date of filing because that defense has no application here as it is an affirmative defense which must have been specifically pled by the Cashmans. *See* Rule 8(c), SCRCP; *Collins Entm't, Inc. v. White*, 363 S.C. 546, 563, 611 S.E.2d 262, 270 (Ct. App. 2005) ("[T]he failure to plead an affirmative defense is deemed a waiver of the right to assert it."). Nevertheless, while laches was not asserted, the Lightseys are not entitled to recover costs associated with building and maintaining Pier 3 prior to the date of filing of the summons and complaint because they never requested that relief from the trial court. *See Loftis v. Loftis*, 286 S.C. 12, 13, 331 S.E.2d 372, 373 (Ct. App. 1985) ("The appellate courts of this state have said many times that ordinarily a party may not receive relief not contemplated in his pleadings.").[2]

## CONCLUSION

For the foregoing reasons, the trial court's order is

**AFFIRMED.**

**WILLIAMS and GEATHERS, JJ., concur.**

---

[2] We recognize that under the posture of this case, the Lightseys may have found it incongruous to claim complete ownership of the pier on the one hand, but request reimbursement for building and maintaining it on the other. Nevertheless, nothing precluded them from alleging alternatively that should the trial court find the Cashmans entitled to use the pier, they should be reimbursed for costs in constructing and maintaining the pier.